UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ZENA DIANE HERNANDEZ,     )
    Plaintiff,           )
                    )
   v.                )     Case No: 4:13-CV-67
                    )     (Mattice/Carter)
CAROLYN W. COLVIN,      )
Commissioner of Social Security,  )
    Defendant.         )

<u>REPORT AND RECOMMENDATION</u>

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability and disability insurance benefits, Title II of the Social Security Act, 42 U.S.C. §§

416(I), 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the

disposition of Plaintiff's Motion for Judgment on the Administrative Record (Doc. 16) and

Defendant's Motion for Summary Judgment (Doc. 17).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner

be AFFIRMED.

<u>Plaintiff's Age, Education, and Past Work Experience</u>

Plaintiff was 44 years old with an 11th grade education when the ALJ rendered his

August 2012 decision (Tr. 21, 231, 277).   Plaintiff had past work as a lead trainer, assembly line

worker, housekeeper, and shipper/loader (Tr. 273, 283-90).

<u>Applications for Benefits</u>

On September 4, 2009, Plaintiff protectively filed for disability insurance benefits ("DIB") with an alleged disability onset date (as amended) of October 7, 2009 (Tr. 231-32, 279). Plaintiff alleged that she was disabled due to carpal tunnel syndrome in both hands, lower back problems, and migraines (Tr. 272). After Plaintiff's claim was denied initially and on reconsideration (Tr. 95-96, 124-27, 129-31), an Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on July 29, 2011 (Tr. 67-92, 97-117). On January 1, 2012, the Appeals Council remanded the case to an ALJ (Tr. 118-23). Another hearing was held on July 3, 2012, and, on August 9, 2012, the ALJ issued an unfavorable decision on remand (Tr. 21-66). The ALJ found Plaintiff had not been under a disability from October 7, 2009 through the date of the decision (Tr. 37). On September 7, 2012, Plaintiff filed a request for review of the ALJ's decision (Tr. 14-21). The Appeals Council denied Plaintiff's request for review (Tr. 1-5), and the Commissioner's decision is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); <u>Abbot v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a

listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

3

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.      The claimant has not engaged in substantial gainful activity since October 7, 2009, the alleged onset date (20 CFR 404.1571, *et seq*).

3.      The claimant has the following severe impairments: carpal tunnel syndrome, status post bilateral releases; degenerative disc disease of the thoracic and lumbar spine; obesity; major depressive disorder, anxiety; and borderline intellectual functioning (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could perform only occasional handling. However, fingering, feeling, and reaching are not significantly limited. The claimant could perform simple, 1-3 step tasks with infrequent work changes.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on _____ ___, 1967 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.156).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social

4

Security Act, from October 7, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 26-37).

## Issue Presented

Plaintiff raises 6 issues in her brief :

A.  The ALJ erred by assigning "great weight" to the opinions of Dr. Petro and Dr. Millis, yet failing to include significant limitations from these opinions in his residual functional capacity finding without addressing or resolving these significant inconsistencies.

B.  The ALJ erred by failing to consider or evaluate Plaintiff's mental impairments and resulting functional limitations as required by 20 CFR 404.1520a and 416.920a.

C.  The ALJ erred by failing to properly evaluate the opinion of Plaintiff's treating physician, Dr. Parawan, as required by statute, case law, and applicable rulings (SSR 96-2p).

D.  The ALJ significantly misrepresented and/or mischaracterized critical evidence of record regarding the severity of Plaintiff's impairments and the credibility of her allegations.

E.  The ALJ erred in failing to properly consider and address the vocational expert's testimony regarding his RFC finding and the available occupational base.

F.  The ALJ erred by failing to properly consider or evaluate the observations and allegations of Plaintiff's sister regarding the severity of her impairments, as required by SSR 06-3p and 20 CFR 404.1513(d)(4) and 416.913(d)(4).

(Doc 16-1, Issues A-E, p. 1-2).

The Commissioner in response reorganized those issues in the order of the sequential evaluation process and in so doing grouped issues A and C because they both relate to the evaluation of various physicians in the record.  I conclude that treatment of the issues in this

5

order is reasonable and will address them as reorganized.

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 26-35) and in the parties' Brief and Memorandum. I will not repeat it here but will refer to relevant portions in the analysis section.

Analysis

A.    The ALJ's Evaluation of Plaintiff's Mental Impairments at Steps Two and Three of the Sequential Evaluation Process.

Plaintiff argues the ALJ failed to comply with the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a (Doc 16-1, Plaintiff's Brief at 11). For reasons that follow, I do not agree. I conclude that the ALJ properly considered the evidence regarding Plaintiff's mental condition and incorporated the psychiatric review technique mode of analysis into his decision (Tr. 27). See 20 C.F.R. § 404.1520a (b), (c), (e)(4).

The ALJ rated Plaintiff's degree of limitation in the four broad functional areas of the paragraph B criteria used in evaluating mental disorders under the Listing of Impairments (Tr. 27). See 20 C.F.R. § 404.1520a(b)(2), (c)(3), (e)(4); see also 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C (discussing the four criteria in paragraph B of the mental disorders listings). The ALJ found Plaintiff had a mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in sustaining concentration, persistence, or pace, and no episodes of decompensation of extended duration (Tr. 27). The ALJ, therefore, complied with 20 C.F.R. § 404.1520a(e)(2)'s requirement that the decision include "a specific finding as to the degree of limitation in each of the functional areas." Plaintiff contends the ALJ was required to articulate an explanation for each of these findings, based on the regulation's statement that the

6

decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." (Doc. 16-1, Plaintiff's Brief, p. 12). However, the Commissioner argues, the ALJ found Plaintiff to have severe mental impairments at step two of the sequential evaluation process, rated Plaintiff's level of functioning in the four areas of the paragraph B analysis at step three, and fully explained the history, treating records, medical findings, and functional limitations in connection with his RFC finding prior to step four (Tr. 27-35).

The ALJ considered the history of Plaintiff's mental health treatment, including her examinations and treatment records (Tr. 30-33). Plaintiff sought treatment with Dr. Alex Fider, a psychiatrist, in October or December 2009 (Tr. 31, 521). As the Commissioner notes, Dr. Fider's hand written progress notes are essentially illegible (Tr. 500, 514). Plaintiff's December 2009 mental status examination revealed tense behavior, depressed and anxious mood, appropriate affect, and no hallucinations (Tr. 512). Plaintiff's thought content and cognition were assessed as normal (Tr. 512). Plaintiff reported walking once a day (Tr. 509). Dr. Fider prescribed medication (Tr. 500, 503-506). As the ALJ correctly noted, treatment notes from Dr. Fider between June 2010 and February 2011 show little active treatment (Tr. 31, 604-06).

The ALJ also considered Plaintiff's March 2010 mental RFC assessment from state agency medical consultant Dr. Larry Welch, a June 2010 psychological consultative examination conducted by Dr. Mark Petro, and the July 19, 2010 psychiatric review technique and mental RFC assessment completed by Dr. Robert de la Torre (Tr. 30-33). I will further discuss Plaintiff's arguments regarding the weight given to the opinion of Dr. Welch and Dr. Petro in the next section, which addresses Plaintiff's challenges to the ALJ's evaluation of medical opinion

7

evidence in this case.  On the basis of the record as a whole, I agree with the Commissioner that the ALJ conducted a thorough review of Plaintiff's medical history and limitations that were supported in the record.

Plaintiff does not contend that she met the requirements for any specific listed impairment in her brief, and does not cite any authority for her position that the ALJ was required to do more to evaluate her mental impairment.  Based on the ALJ's evaluation of the evidence and Plaintiff's limitation in the four broad functional areas, the ALJ concluded Plaintiff had severe mental impairments, but she did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 26-27).  See 20 C.F.R. § 404.1520a(d)(1), (d)(2).  The ALJ then proceeded to assess Plaintiff's mental RFC (Tr. 27-35).  See 20 C.F.R. § 404.1512a(d)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184.  I conclude substantial evidence supports the ALJ's findings at step two and three of the sequential evaluation process, and the ALJ's decision complies with the requirements of 20 C.F.R. § 404.1520a(e)(2).

B.     The ALJ's Evaluation of the Medical Opinion Evidence.

Plaintiff argues that the ALJ, despite giving great weight to the opinions of Dr. Mark Petro and Dr. James Millis, failed to include certain limitations supported by their opinions in his RFC assessment (Doc. 16-1, Plaintiff's Brief at 8-11).  Plaintiff argues the ALJ failed to properly address the opinion of state agency medical consultant Dr. Larry Welch and her treating physician, Dr. Cristina Parawan (Doc. 16-1, Plaintiff's Brief at 13-18).

The Social Security Act provides that the Commissioner is responsible for deciding whether a claimant is disabled or not disabled.  See 42 U.S.C. § 405(b)(1).  The ALJ, and not a

8

doctor, has the responsibility of deciding issues reserved for the Commissioner, such as a claimant's RFC and whether a claimant is disabled or not disabled.  See 20 C.F.R. §§ 404.1527(d), 404.1546(c); SSR 96-5p, 1996 WL 374183, at *2.  The assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record," and not simply on doctors' opinions.  20 C.F.R. § 404.1545(a)(1).[3]  The ALJ had the responsibility of deciding the weight to accord a doctor's opinion, as with any evidence in the record.  See 20 C.F.R. §§ 404.1527, 404.1545, 404.1546(c); Richardson v. Perales, 402 U.S. 389, 399 (1971); Warner, 375 F.3d at 391.  I conclude the ALJ fulfilled his responsibility of weighing the evidence, assessing Plaintiff's RFC, and deciding whether Plaintiff was disabled or not disabled.  See 20 C.F.R. §§

---

[3]Residual functional capacity is defined as the most Plaintiff can still do despite the physical and mental limitations which result from her impairments.  See 20 C.F.R. § 404.1545(a); Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391-392 (6th Cir. 1999) (noting that Plaintiff carries the burden of proof to establish her residual functional capacity).  The ALJ's RFC finding itself constitutes the required "function by function" analysis mentioned in Plaintiff's brief.  Pl's Br. at 8-9.  In pertinent part, SSR 96-8p states, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3.  SSR 96-8p requires that the ALJ consider all the evidence and assess the claimant's ability to do work-related activities.  See SSR 96-8p, 1996 WL 374184 at *3, *5.  SSR 96-8p states that, at step 4 of the sequential evaluation process, the RFC should not be initially expressed in terms of exertional categories.  Id.  At step 5, the RFC must be expressed in terms of the exertional categories, such as "light" or "sedentary."  Id.  In this case, the ALJ discussed the medical evidence in accordance with SSR 96-8p and found that Plaintiff could perform the exertional demands of a range of light work (Tr. 27-35).  The definition of light work found in the rulings and regulations encompasses the above work-related activities.  20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251.  Thus, the regulations and rulings explain the exertional demands associated with light work, and the ALJ's RFC finding sufficiently constitutes the "function by function" assessment contemplated by SSR 96-8p.  Furthermore, the Sixth Circuit has indicated SSR 96-8p does not require ALJs to provide a detailed function-by-function analysis in writing.  See Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. 2013); Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. 2002); see also Murname v. Colvin, No. 2:12-164-DCR, 2013 WL 5303632, at *7 (E.D. Ky. Sept. 20, 2013) (citing Delgado and concluding "The ALJ provided a narrative discussion of Murnane's symptoms, their effect on his work, and how he reached those conclusions.  Thus, the narrative he provided complied with the requirements of SSR 96–8p").

404.1520, 404.1527, 404.1545, 404.1546(c); <u>Poe v. Comm'r of Soc. Sec.</u>, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009).

When according weight to the opinion of a treating source, the opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); <u>see</u> <u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 376 (6th Cir. 2013); <u>Hensley v. Astrue</u>, 573 F.3d 263, 266 (6th Cir. 2009) (quoting <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 548 (6th Cir. 2004)). However, if a treating source's opinion is not well supported by such techniques or is inconsistent with the other substantial record evidence, it is not entitled to controlling weight. <u>See</u> 20 C.F.R. § 404.1527(c)(2); <u>Tilley v. Comm'r of Soc. Sec.</u>, 394 F. App'x 216, 222-23 (6th Cir. 2010); <u>see also</u> <u>Smith v. Comm'r of Soc. Sec.</u>, 482 F.3d 873, 876-77 (6th Cir. 2007) (affirming ALJ's finding that treating source opinions based solely on claimant's subjective reports of symptoms were not entitled to controlling weight).

When an ALJ determines he will not give controlling weight to a treating source opinion, he must provide "good reasons for his decision." <u>See</u> 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." <u>Gayheart</u>, 710 F.3d at 376 (quoting <u>Wilson</u>, 378 F.3d at 544) (internal quotation marks omitted). The ALJ's good reasons must be supported by the evidence in the case record and sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating

10

source's opinion and the reasons for that weight. See Wilson, 378 F.3d at 544; SSR 96-2p, 1996 WL 374188, at *5. An examining doctor's opinion, however, is not entitled to any special deference or consideration. See Smith v. Comm'r of Soc. Sec., 482 F.3d at 876; Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ here properly applied this framework.

Turning to the medical evidence in this case, Dr. Petro, a psychologist, examined Plaintiff once, on June 18, 2010 (Tr. 522-27). Plaintiff was assessed as having good judgment and insight with primarily appropriate interaction with the examiner. Dr. Petro estimated Plaintiff to be in the borderline range of intellectual functioning (Tr. 522). Plaintiff reported having three jobs in her lifetime and denied being fired from any employment (Tr. 523). Plaintiff told Dr. Petro that she had not worked since January 2010, when she was laid off from production work, because she could not find another job (Tr. 523). Dr. Petro's mental status examination revealed Plaintiff was fully oriented and her thought form and content were within normal limits (Tr. 524). Plaintiff was able to perform some simple math, spell in reverse, recall recent and remote events, and remember three objects after five minutes (one with prompting) (Tr. 524). Plaintiff could partially work with abstraction (Tr. 524). As for her activities, Plaintiff reported involvement in housecleaning, shopping, watching television, and taking care of her grandson (Tr. 524-25). Plaintiff reported diminished activities over the two years prior to the examination and stated that she had difficulty interacting with others (Tr. 524-25). Dr. Petro diagnosed Plaintiff with major depressive disorder, single episode, in partial remission (Tr. 525). He concluded Plaintiff may have mild to moderate difficulty understanding simple and complex instructions and job procedures, as well as mild to moderate difficulty sustaining concentration and persistence (Tr. 525). He assessed Plaintiff as having mild difficulty interacting with the general public and co-

11

workers and with her ability to adapt to workplace changes (Tr. 525). According to Dr. Petro, Plaintiff may have mild to moderate difficulty in her ability to take precautions against workplace hazards (Tr. 525).

The ALJ considered Dr. Petro's examination in his decision. The decision includes a thorough review of Dr. Petro's findings (Tr. 31-32). The ALJ gave the assessment great weight, finding it consistent with the record as a whole (Tr. 32). The ALJ's RFC limited Plaintiff to simple 1-3 step tasks with infrequent work changes (Tr. 28). Plaintiff argues the ALJ erred by failing to include additional limitations in his RFC finding related to Dr. Petro's conclusion that Plaintiff may have mild to moderate difficulties taking precautions against workplace hazards (Doc. 16-1, Plaintiff's Brief at 9). Plaintiff argues the ALJ failed to include additional limitations in his RFC finding consistent with the opinion of Dr. Millis, a state agency medical consultant who examined Plaintiff's records and completed a physical RFC assessment on August 18, 2010 (Tr. 548-56). Dr. Millis concluded Plaintiff was capable of light work with unlimited push and pull ability (Tr. 549). Although Dr. Millis checked a box indicating Plaintiff's pushing and pulling ability was unlimited, he typed "Occ P/P BUE" underneath the section of the form instructing him to explain his conclusions (Tr. 549). In another section of the form, Dr. Millis assessed Plaintiff's manipulative limitations (Tr. 551). Dr. Millis concluded Plaintiff's ability to reach in all directions, finger, and feel were unlimited (Tr. 551). Plaintiff's ability to handle was limited due to her carpal tunnel syndrome (Tr. 551). Plaintiff takes the position that the ALJ should have concluded Plaintiff was limited to occasional pushing and pulling in her upper extremities (Doc. 16-1, Plaintiff's Brief at 9-10). The ALJ reviewed Dr. Millis's RFC assessment in his decision (Tr. 33). The ALJ noted that Dr. Millis concluded

12

Plaintiff had the unlimited ability to push and pull and noted that Dr. Millis assessed Plaintiff

with limitations in handling (Tr. 33). The ALJ gave great weight to Dr. Millis's assessment,

which the ALJ noted reflected light limitations (Tr. 35). The ALJ's RFC finding limited Plaintiff

to occasional handling but found her ability to reach was not significantly limited, consistent

with Dr. Millis's RFC assessment (Tr. 27). The ALJ did not include limitations on Plaintiff's

ability to push and pull with her upper extremities.

The Commissioner argues Plaintiff's position - that the ALJ was required to adopt each

and every limitation assessed by a medical opinion - lacks support in the regulations and case

law. As previously noted, the RFC determination is not a medical assessment but, instead, is an

evaluation made by the ALJ, and the RFC finding is based on all evidence in the record, not

merely on the medical evidence. See 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c); Coldiron v.

Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010); Webb v. Comm'r of Soc. Sec., 368

F.3d 629, 633 (6th Cir. 2004); see also 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a

claimant's RFC is issue reserved for the Commissioner). "[A]n ALJ does not improperly

assume the role of a medical expert by weighing the medical and non-medical evidence before

rendering an RFC finding." Coldiron, 391 F. App'x at 439.

I agree with the Commissioner that Dr. Petro's conclusion, that Plaintiff may have mild

to moderate difficulties taking precautions against workplace hazards, is not a definitive

conclusion that Plaintiff would have such difficulties, and the record fails to support a conclusion

that the limitation in this regard had to be included in Plaintiff's RFC. Similarly, the ALJ was

not required to include additional limitations relating to Dr. Millis's inconsistent statement about

Plaintiff's ability to push and pull. The record shows Plaintiff underwent carpal tunnel release

13

surgeries with good results and the consultative examinations and treatment records do not reflect restrictions or limitations on Plaintiff's ability to push and pull (Tr. 35). As in many cases, there was evidence which, if accepted by the ALJ, could have resulted in greater restrictions. However, looking at the record as a whole, I conclude the ALJ's RFC finding adequately accounts for all limitations supported in the record.

Next, Plaintiff argues the ALJ failed to properly address the opinion of Dr. Larry Welch, a state agency medical consultant who reviewed Plaintiff's medical records and completed a mental RFC assessment on March 22, 2010 (Tr. 454-57). Dr. Welch concluded Plaintiff could understand and remember one to three step tasks; sustain concentration, persistence, or pace for two-hour periods; interact with small groups, one on one, and occasionally with the public and get along with co-workers and supervisors with no major problems expected; and adapt to routine change and avoid major hazards (Tr. 456). The ALJ reviewed Dr. Welch's assessment thoroughly in his decision (Tr. 30-31). He gave Dr. Welch's assessment great weight, except for Dr. Welch's assessment that Plaintiff had more significant limitations in the area of social functioning (Tr. 30-31). The ALJ found that the overall medical evidence of record reflected more mild limitations in this area (Tr. 31). Although Plaintiff argues the ALJ's finding in this regard is completely conclusory, (Doc. 16-1, Plaintiff's Brief at 13), she cites no record evidence to support the social functioning limitations she contends should have been included in her RFC finding. Instead, Plaintiff argues that the ALJ's identification of her anxiety impairment as severe "necessarily means" that this impairment results in limitations that should be incorporated in her RFC finding (Doc. 16-1, Plaintiff's Brief at 13). However, the RFC assessment is a determination of Plaintiff's functional abilities despite her impairments, and the mere fact that

14

someone has a severe impairment does not support an assumption that such an individual is unable to work. The ALJ assesses RFC on the basis of those limitations that are supported by the record as a whole.

Finally, as to Plaintiff's treating physician, Dr. Cristina Parawan, the record reflects that Dr. Parawan began treating Plaintiff in October 2003 (Tr. 392-429, 580-96). Plaintiff's back pain is noted in Dr. Parawan's records, and Dr. Parawan consistently prescribed pain medication (See, e.g., Tr. 398-99, 403-05, 407, 584, 589, 593). In March 2009, Plaintiff reported pain after lifting a heavy microwave (Tr. 402). Dr. Parawan prescribed pain medication (Tr. 402). In July 2009, Plaintiff told Dr. Parawan that her medication "really helps" (Tr. 397). In August 2009, Plaintiff reported "feeling good" (Tr. 396). Plaintiff continued taking pain medication (Tr. 580, 584, 589). In June 2011, Dr. Parawan authored a letter stating that Plaintiff was "not able to work anymore due to chronic low back pain, from degenerative disk disease of the lumbar spine" (Tr. 597). Dr. Parawan also stated that Plaintiff was not "able to do prolonged walking, standing, or sitting" (Tr. 597).

The ALJ reviewed Dr. Parawan's treatment records and her letter in the decision (Tr. 29, 30, 33). The ALJ gave little weight to Dr. Parawan's letter, stating that the letter represented a blanket statement of disability, which is an issue reserved for the Commissioner (Tr. 33). The ALJ's statement in this regard was correct. See 20 C.F.R. § 404.1527(a)(2), (d)(1), (d)(2); SSR 96-5p; Dunlap v. Comm'r of Soc. Sec., No. 11-5633, 2012 WL 6700319, at *3 (6th Cir. Dec. 27, 2012); Bass v. McMahon, 499 F.3d 506, 511 (6th Cir. 2007). The ALJ concluded that the record as a whole and Dr. Parawan's treatment records did not support a finding that Plaintiff is unable to work (Tr. 33). As previously noted, Dr. Parawan's treatment records reflect conservative

15

treatment consisting of prescription pain medication (Tr. 398-99, 403-05, 407, 584, 589, 593).[1]

See 20 C.F.R. § 404.1527(c)(1), (c)(2); Helm v. Comm'r of Soc. Sec. Admin., 405 F. App'x 997, 1001 (6th Cir. 2011). Dr. Parawan does not appear to have noted any restrictions or functional limitations in her records. See 20 C.F.R. § 404.1527(c)(3); Walters, 127 F.3d at 529-30; Bogle v. Sullivan, 998 F.2d 342 (6th Cir. 1993). As the Commissioner notes, Dr. Parawan's letter does not reference her own treatment records or any other objective medical evidence or any evidence to support her opinion. She did not describe what she meant by "prolonged walking, standing, or sitting" (Tr. 597).

Dr. Parawan's opinion is inconsistent with the record as a whole, as discussed by the ALJ (Tr. 27-35). See 20 C.F.R. § 404.1527(c)(4); Walters, 127 F.3d at 529-30; Bogle, 998 F.2d at 347-48. As the ALJ noted, Plaintiff's November 2008 lumbar spine X-ray was normal (Tr. 28, 438). A July 2009 X-ray of Plaintiff's sacrococcygeal spine was also normal (Tr. 29, 447). In September 2009, Plaintiff was referred to Neurosurgical Associates, and her examination revealed full strength in both lower extremities, intact sensation, normal gait, equivocal straight leg raise test, and some tenderness in her right paraspinous muscles (Tr. 29, 497). Plaintiff's X-rays showed minimal degenerative changes and a 2003 MRI was essentially normal (Tr. 49, 497). An MRI was ordered and obtained in October 2009 (Tr. 29, 450-51, 496-97). According to Plaintiff's specialist, the MRI showed some minor degeneration of the L5-S1 disc space, a small posterior disc bulge without any significant neural impingement, and good maintenance of

---

1 Plaintiff's position that the ALJ failed to consider Dr. Parawan's treating history with Plaintiff, Pl's Br. at 16, is simply not accurate. The ALJ's decision reflects that the ALJ reviewed Dr. Parawan's treating notes and recognized Dr. Parawan as Plaintiff's primary care physician (Tr. 29-30).

disc height (Tr. 496). Pain management was recommended as the best course of treatment (Tr. 496).

In December 2009, Plaintiff underwent a physical consultative examination (Tr. 30, 430). At that time, Plaintiff ambulated normally, had no problems getting up from the chair, and was able to heel walk and stand on one foot (Tr. 30, 430). Plaintiff's back examination revealed no spasm, unremarkable movement from sitting to standing, and reduced range of motion with poor effort noted (Tr. 30, 430). In April 2010, Plaintiff sought emergency care for back pain that she reported as worsening on the previous day (Tr. 31, 489). On examination, Plaintiff had negative bilateral straight leg raise test, no spasm, and tenderness (Tr. 489). Plaintiff was given pain medication and discharged in stable condition (Tr. 31, 490). The following month, in May 2010, Plaintiff returned to her neurosurgical specialist and reported a recent exacerbation of her back pain (Tr. 495). Plaintiff was referred for epidural steroid injections with a notation that no surgical interventions were indicated (Tr. 31, 495).

In June 2010, Plaintiff underwent another physical consultative examination (Tr. 32, 528-29). Plaintiff was noted as functioning well, and she had normal gait with good cadence (Tr. 32, 528). Plaintiff could tandem walk, balance weight on each foot, and go up on her toes and heels (Tr. 32, 528). She had negative straight leg raise test and good sensation to her toes (Tr. 32, 528). Plaintiff had slightly reduced range of motion in her lumbar spine (Tr. 32, 528). In February 2011, Plaintiff again sought emergency treatment for back pain, after squatting down and experiencing a sudden sharp pain (Tr. 33, 558). Plaintiff reported running out of her prescription pain medication one month prior to the emergency visit (Tr. 558). On examination, her straight leg test was negative bilaterally, she had no spasm, and tenderness was noted (Tr.

17

558).  Plaintiff was treated with pain medication and released (Tr. 33, 559).  I conclude the medical records as a whole do not support Dr. Parawan's opinion that Plaintiff was unable to work and unable to sit, stand, or walk for "prolonged" periods.  Substantial evidence therefore supports the ALJ's decision to afford this opinion little weight.

I conclude the ALJ was not required to re-contact Dr. Parawan.  The ALJ's decision to accord Dr. Parawan's limited opinion little weight did not trigger a duty to contact her.  See 20 C.F.R. § 404.1512(e); Skarbek v. Barnhart, 390 F.3d 500, 503-04 (7th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).  As the Commissioner argues, recontacting of a medical source is necessary only when the evidence received from the medical source is inadequate to determine whether the claimant is disabled or not disabled.  Plaintiff has not shown that the record was inadequate.  As discussed above and by the ALJ, the record provides substantial evidence to support the ALJ's findings, including his decision to give Dr. Parawan's opinion little weight.  See 20 C.F.R. § 404.1527(d), (e); Warner, 375 F.3d at 390-91; Walters, 127 F.3d at 529-30; Bogle, 998 F.2d at 347-48.  Plaintiff failed to show that the ALJ needed to further develop the record or that she was prejudiced by any alleged gap in the evidence.  See Born v. Sec'y of Health and Human Servs., 923 F.2d 1168, 1172 (6th Cir. 1990); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 856 (6th Cir. 1986).

C.      The ALJ's Evaluation of Plaintiff's Cedibility.

Plaintiff argues the ALJ erred in evaluating her credibility.  I disagree.  When a claimant alleges disability based on her subjective complaints, she must present objective medical evidence of an underlying medical condition.  See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p,

18

1996 WL 374186, at *2; <u>Walters</u>, 127 F.3d at 531.  If a medically determinable condition exists, the ALJ must decide if the objective medical evidence confirms the severity of the alleged symptoms arising from the condition or if the condition is of such severity that it could reasonably be expected to give rise to the alleged symptoms.  <u>See</u> 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *2; <u>Walters</u>, 127 F.3d at 531.  "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." <u>Walters</u>, 127 F.3d at 531 (citation omitted).   Substantial evidence supports the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms during the relevant period were not entirely credible (Tr. 27-35).

The ALJ considered Plaintiff's testimony, extensively reviewing her testimony in his hearing decision.  As trier of fact he determined that Plaintiff's complaints were not credible to the disabling extent alleged (Tr. 28).  The ALJ thoroughly discussed the evidence he relied upon in finding Plaintiff to be only partially credible (Tr. 28-35).  Plaintiff testified that she attempted to work for two days in 2010 but was not successful due to back pain (Tr. 49).  Plaintiff  testified that her back pain had increased over the past year and rated her pain level as "9" (Tr. 49-50).  Plaintiff stated that she elevated her legs for 15 minutes, three or four times during the day (Tr. 50).  On a bad day, Plaintiff sits four to six hours per day (Tr. 50).  Plaintiff testified that she frequently drops objects and has difficulty bending (Tr. 51, 55).  Plaintiff reported experiencing migraine headaches twice per week (Tr. 52).  Plaintiff stated she stopped receiving treatment for depression due to lack of insurance coverage (Tr. 54).  Plaintiff testified to experiencing fatigue

19

(Tr. 56).

After reviewing this testimony, the ALJ carefully considered the medical records, reviewing the available evidence regarding Plaintiff's alleged back pain and wrist pain, as well as her mental health treatment records (Tr. 28-35). See 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *2; Walters, 127 F.3d at 531-32. Although Plaintiff offered numerous complaints, she failed to provide objective medical evidence confirming the severity of her alleged symptoms, and the record as a whole does not indicate her condition was of disabling severity. The ALJ conducted a thorough review of Plaintiff's medical evidence, including her treatment records, objective testing results, and the results of Plaintiff's consultative examinations (Tr. 27-35). Plaintiff argues the ALJ misrepresented Plaintiff's MRI report (Doc 16, Plaintiff's Brief at 18-19). Plaintiff's specialist reviewed the MRI and concluded that it showed some minor degeneration of the L5-S1 disc space, a small posterior disc bulge without any significant neural impingement, and good maintenance of disc height (Tr. 496). The MRI report itself notes that paraspinous soft tissues, vertebral body heights, and sagittal alignment appear maintained. The impression on the report is focal degenerative disc changes with no high grade stenosis. The specific findings of the report note only "mild" stenosis at two levels (Tr. 450).

I conclude the ALJ did not misrepresent the objective testing in this case. In addition to the medical evidence, the ALJ considered a function report completed by Plaintiff in April 2010, as well as the activities Plaintiff reported to Dr. Petro during his examination and her testimony at a prior administrative hearing (Tr. 33-34, 318-25). The ALJ explained why he found Plaintiff not entirely credible, pointing to evidentiary inconsistencies, conservative treatment, the fact that

20

Plaintiff collected unemployment compensation, Plaintiff's poor effort during one of her consultative examinations, and the objective medical evidence (Tr. 34-35). The ALJ determined that while Plaintiff likely experienced some degree of frequent or daily discomfort, her allegations of debilitating pain were only entitled to some weight (Tr. 35).

      D.      The Third Party Evidence.

      Plaintiff argues the ALJ should have specifically discussed a third party report from her sister (Tr. 326-33) (Doc 16-1, Plaintiff's Brief at 21-22). The statements from Plaintiff's sister are basically duplicative of Plaintiff's allegations in her own function report which was expressly considered by the ALJ (Tr. 33), and like Plaintiff's allegations, are unsupported and inconsistent with the medical and other evidence. Plaintiff admits that her sister's statements are consistent with her own, which, as previously explained, the ALJ properly discredited. Pl's Br. at 22. Thus, the ALJ was not required to specifically discuss the statements from Plaintiff's sister. See Higgs, 880 F.2d at 863. The ALJ was not required to provide a detailed analysis of each piece of evidence. See Bailey v. Comm'r of Soc. Sec., 2011 WL 850334, at *2 (6th Cir. Mar. 11, 2011); Kornecky v. Comm'r Soc. Sec., No. 04-2171, 2006 WL 305648, at *9-10 (6th Cir. Feb. 9, 2006). Given the lack of evidence to support the allegations of Plaintiff or Plaintiff's sister, I conclude remand to have the ALJ specifically discuss the report from Plaintiff's sister would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. See Shinseki v. Sanders, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); Maloney v. Comm'r of Soc. Sec., No. 10–2583, 2012 WL 1676683, at *5 (6th Cir. May 15, 2012) (even if ALJ erroneously disregards lay witness's testimony, error

is harmless if no reasonable ALJ could have reached a different disability determination).

Plaintiff failed to meet her burden of proving that her condition caused disabling limitations. See 42 U.S.C. §§ 416(i)(3), 423(a)(1)(A), (c)(1), (d)(5)(A); 20 C.F.R. §§ 404.101, 404.131, 404.315(a), 404.1512(a), 404.1529(a); Foster, 279 F.3d at 353; Bogle, 998 F.2d at 347; Higgs, 880 F.2d at 862. Substantial evidence supports the ALJ's credibility finding and assessment of Plaintiff's RFC through the date of the ALJ's decision.

E.     The ALJ's Reliance on the VE's Testimony.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff could not perform her past relevant work (Tr. 35). See 20 C.F.R. § 404.1520(a)(4)(iv), (f). The ALJ, therefore, had to determine if Plaintiff could perform other work. See 20 C.F.R. § 404.1520(a)(4)(v), (g). The ALJ utilized the framework of the Medical-Vocational Guidelines and the testimony of the VE to determine that a significant number of jobs existed in the national economy that Plaintiff could perform (Tr. 36). In response to the ALJ's hypothetical question, the VE identified examples of jobs Plaintiff could perform given her limitations (Tr. 59-64). The ALJ's hypothetical question set forth all the reasonable limitations Plaintiff had on her ability to work (Tr. 59). The ALJ, therefore, properly relied on the VE's testimony to find that Plaintiff could perform other work. See Foster, 279 F.3d at 356-57; Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993); Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779-80 (6th Cir. 1987). Plaintiff failed to provide evidence establishing that she had additional or disabling limitations. See 20 C.F.R. § 404.1529; Casey, 987 F.2d at 1235.

Plaintiff focuses on the VE's testimony that only five light work jobs would be consistent with the RFC's limitation to occasional handling. Pl's Br. at 20. The ALJ expressly addressed

22

this portion of the VE's testimony in his decision, noting that the VE testified that five jobs in the light work category would be compatible with Plaintiff's handling limitation (Tr. 36). The ALJ noted, however, that the representative occupations he discussed – plant tour guide (350 jobs in the regional economy and 240,000 jobs in the national economy), character impersonator (800 jobs in the regional economy and 150,000 jobs in the national economy), and bakery worker (1,200 jobs in the regional economy and 150,000 jobs in the national economy) – represented a significant number of jobs in the national economy (Tr. 36).

As the Commissioner argues, even if Plaintiff is correct in her argument that the plant tour guide job represents semi-skilled work, the remaining two jobs represent a significant number of jobs in the national economy. See 20 C.F.R. § 404.1566; Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999); Hall v. Bowen, 837 F.2d 272, 274-275 (6th Cir. 1988); see also Stewart v. Sullivan, No. 89-6242, 1990 WL 75248, at *4 (6th Cir. June 6, 1990) (125 jobs in the region and 400,000 jobs in the national economy significant); Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in state); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in state, and 80,000 nationally). Plaintiff argues the VE's testimony supports a finding of disability because of the possibility that she would have to handle more than occasionally on a day when machinery was not working properly at the bakery position. However, this ignores the character impersonator job, which would not involve any machinery. Moreover, Plaintiff cites nothing to support the position that the possibility of equipment failure is sufficient to challenge the ALJ's decision, and the VE was not able to testify as to the likelihood of an equipment failure (Tr. 60). The VE's testimony provides substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled.

23

<u>Conclusion</u>

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1)  The plaintiff's motion for judgment on the administrative record (Doc. 16) be DENIED.

(2)  The defendant's motion for summary judgment (Doc. 17) be GRANTED.

(3)  The case be DISMISSED. [2]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).